## Case No. 15,710.

### UNITED STATES v. MAKINS.

[Hoff. Op. 500; 3 Am. Law Rev. 777.] [1]

District Court, D. California. Feb. 17, 1869.

CERTIFICATE OF CITIZENSHIP—ILLEGAL SALE—EMPLOYMENT OF SEAMAN.

[1. The certificate or evidence of citizenship, the sale of which is made criminal by Act March 3, 1813, is a certified copy of the act by which one was naturalized, and which authorizes his employment on an American vessel, and does not include a certificate signed by the clerk, and under the court seal, to the effect that one, on the day therein named, was admitted to be a United States citizen.]

[1] [3 Am. Law Rev. 777, contains only a partial report.]

[2. The clerk of a court has no right to certify the substance, purport, or effect of a judgment of record in his office.]

D. Lake. U. S. Atty.

J. H. Hardy, for defendant.

HOFFMAN, District Judge. The indictment in this case avers, in substance, that the defendant wilfully, feloniously and maliciously did make sale and dispose of a certain certificate of naturalization and citizenship, etc., and deliver the same to one James Burke, to whom the same was not originally issued, and did not rightfully belong, etc. The certificate of citizenship alleged to have been sold and disposed of, is set out in full in the indictment. The defendant demurs on the ground that the certificate alleged to have been sold is not the "certificate or evidence of citizenship" contemplated by the law; that it was issued without authority, and is wholly void, and that the sale and disposition of it constitute no offence under the statute. The law under which the indictment is framed is contained in the thirteenth section of the act of congress of March 3d, 1813 (2 Stat. 811). It is as follows: "That if any person shall falsely make, forge, or counterfeit, or cause or procure to be falsely made, forged or counterfeited, any certificate or evidence of citizenship, referred to in this act, or shall pass, utter or use as true any false, forged or counterfeited certificate of citizenship, or shall make sale or dispose of certificate of citizenship to any person other than the person for whom it was originally issued or to whom it may of right belong, every such person shall be deemed guilty of felony," etc., etc. It is evident that to bring an offender within this statute it must appear that he has forged, or uttered and passed, or sold and disposed of, a "certificate of citizenship," within the meaning of that term as used in the statute. It will be observed that in the first clause of the section the words used are, "any certificate or evidence of citizenship referred to in this act." In the succeeding clauses the words italicized are omitted; but it is evident that but one kind of certificate is referred to throughout the section. The first clause contemplates the forging, the second the uttering of a forged certificate, and the third the unlawful sale or disposal of a certificate. It cannot be doubted that the intention of the law-giver was to denounce the forging and counterfeiting, and the passing and uttering of the same kind of certificate, to wit: "the certificate or evidence of citizenship referred to in this act," and there is no reason to suppose that the word *"certificate"* was used in any different sense in the third clause. What "the certificate or evidence of citizenship *referred to in this act*," is, is apparent from the second section. The act is entitled, "An act for the regulation of seamen on board the public and private vessels of the United States." Section 2 provides, that it "shall not be lawful to employ as aforesaid any naturalized citizen of the United States unless such citizen shall produce to the commander of the public vessel, if to be employed on board such vessel, or to a collector of customs, a *certified copy of the act by which he shall have been naturalized*, setting forth such naturalization and the time thereof." The certificate, set forth in the indictment, in no respect answers to these requirements. It does not purport to be a certified copy of the "act by which the party has been naturalized," or of any judicial record of naturalization. It is merely a certificate, signed by the clerk and under the seal of the court, to the effect that the party on the day therein named was by the judgment of the court admitted to be a citizen of the United States. It states a fact, but it does not pretend to be a copy of any judicial record whatever. Non constat, so far as appears from the certificate, that any record of the judgment of the court by which the alien was made a citizen exists. That the act of the court admitting an alien to citizenship is a judicial judgment, has been expressly decided by the supreme court. In Spratt v. Spratt, 4 Pet. [29 U. S.] 408, Mr. Ch. J. Marshall says: "The various acts upon the subject submit the decision on the rights of aliens to admission as citizens, to courts of record. They are to receive testimony, to compare it with the law, and to judge on both law and fact. The judgment is entered on record as the judgment of the court. It seems to us, if it be in legal form to close all inquiry, and like every other judgment, to be complete evidence of its own validity." This judgment, or the records of it, remains on file among the records of the court, and it can be proved only by the production of the original if required in the court by which it was rendered, or by a certified copy or exemplification of it if required elsewhere. The clerks of the United States courts have no power by statute to certify to matters of fact provable by the records in their custody. "In regard to certificates," says Greenleaf, "given by persons in official station the general rule is, that the law never allows a certificate of a mere matter of fact, not coupled with matter of law, to be given in evidence. If the person was bound to record the fact then the proper evidence is a copy of the record duly authenticated." 1 Greenl. Ev. § 498. So it has been held, that though an officer having the legal custody of public records is ex-officio competent to certify copies of their contents (1 Greenl. Ev. 485–507), yet his certificate of the substance or purport of the record is inadmissible (McGuire v. Sayward, 9 Shep. [22 Me.] 230). The clerk of a court has therefore no more right to certify the substance, purport or effect of a judgment of record in his office, than the recorder of a county would have, to certify

that certain parties conveyed a certain piece of land on a certain day, instead of copying the deed in full and appending to it a certificate that the same is a true copy of the record in his office. Even then, if the description in the second section of the act of 1813, of the certificates "referred to in the act" were less explicit and unmistakable, or if it were possible to construe the word "certificate" in the 3d clause of the 13th section as referring to some other kind of certificate than those mentioned in the preceding clauses, the last clause would remain nugatory and inoperative—for there is no certificate of a judgment which the clerk can furnish other than a certified copy of the record, and therefore no other certificate of naturalization to which the statute could by possibility refer. It follows that the certificate of naturalization which the indictment charges the defendant with having feloniously sold and disposed, is not the certificate, the felonious sale or use of which is made a crime by the statute. The demurrer must, therefore, be sustained. It is proper to add that the irregularity of these certificates is not imputable to the present clerk of the circuit court, or to his predecessor. They both have adopted the forms found in the office, and which appear to have been long used, without being brought to the notice of either the former or present judge of the circuit court, or of the district judge. It is with reluctance that I reach the conclusion at which I have arrived, for I fear that through this informality many guilty persons will escape just punishment.